Kevin K. Tung [KT 1478]
Kun Zhao     [KZ 3608]
KEVIN KERVENG TUNG, P.C.
136-20 38th Avenue, Suite 3D
Flushing, New York 11354
Tel:   (718) 939 4633
Fax:   (718) 939 4468

Attorneys for Plaintiff
GOLDEN ARCHER INVESTMENTS, LLC

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GOLDEN ARCHER INVESTMENTS, LLC,<br><br>              Plaintiff,<br><br>vs.<br><br>SKYNET FINANCIAL SYSTEMS, LLC, JAMES SILVERSTEIN, and PAUL SCHNEIDER,<br><br>              Defendants. | Civil Action No. 11-3673 (RJS)<br><br>**FIRST AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Golden Archer Investments, LLC ("Plaintiff"), by and through its attorney, Kevin Kerveng Tung, P.C., for its Complaint against Defendants Skynet Financial Systems, LLC ("Skynet"), James Silverstein ("Silverstein"), and Paul Schneider ("Schneider") (collectively "Defendants"), alleges as follows, upon knowledge with respect to itself and its own acts, and upon information and belief as to all other matters:

**INTRODUCTION**

1.     Plaintiff files this action against defendants Skynet, Silverstein and Schneider for (1) fraudulent inducement; (2) breach of contract; (3) breach of the covenant of good faith and fair dealing; and (4) unjust enrichment.

2.      In or about September 2010, Plaintiff engaged and contracted with defendant Skynet to further develop and complete a market-making program which Plaintiff started earlier in 2010 ("Contract").

3.      Prior to the Contract, Silverstein and Schneider fraudulently induced Plaintiff to enter contract with Skynet by misrepresenting Skynet's previous experience, performance and successes in similar programming projects. Further, Silverstein and Schneider estimated, represented and promised that the project would take approximately two months.

4.      During the performance of the Contract, Defendants misrepresented facts to induce Plaintiff to abandon previous project and instead to use Skynet's pre-built software components.

5.      Defendants intentionally obscured the purpose of the program with no source code and failed to provide meticulous documentation for the programming for other third party programmers to follow so as to assert absolute control of Plaintiff's program.

6.      Further, while parties have the understanding that software or programs developed by Skynet should be free of charge in perpetuity, some or all of Skynet's software developed for Plaintiff are set to expire by June 1, 2011 without knowledge and consent of Plaintiff.

7.      After more than six (6) months, Skynet failed to deliver functional software it promised according to the Contract and parties' agreement.

8.      Because of Skynet's bad faith and unfair dealing, third party programmers could not continue to work on the software or program left by Skynet.

9.      Skynet received approximately $131,623.75 for an unreasonably prolonged project and its nonfunctional work product.

10.     Plaintiff is currently left without a functional trading program, running dangerously low on operating capital, and has lost investors who were ready and waiting for Plaintiff to trade with the new software program.

11.     In bringing this lawsuit, Plaintiff is seeking compensatory damages, punitive damages, costs and reasonable attorneys' fees to be determined at trial.

## THE PARTIES

12.     Plaintiff Golden Archer Investments LLC ("Plaintiff") is an investment management firm engaging in "market-making" and securities markets trading.

13.     Plaintiff is a limited liability company incorporated in the State of Delaware with its principal place of business at 20 Pine Street Suite 1810, New York, New York 10005.

14.     Upon information and belief, defendant Skynet Financial Systems, LLC ("Skynet") is a limited liability company incorporated in the State of Illinois with its principal place of business at 141 W. Jackson Boulevard #300, Chicago, Illinois 60604.

15.     Upon information and belief, defendant Skynet's principal office listed on the Illinois Secretary of State file (#02833042) is 760 Heatherdown Way, Buffalo Grove, Illinois 60089.

16.     Upon information and belief, defendant Skynet is a consulting company that offers computer programming services to financial firms.

17.     Upon information and belief, defendant James Silverstein ("Silverstein") was and is an Illinois resident with his last known address at 141 W. Jackson Boulevard #300, Chicago, Illinois 60604.

18.     Upon information and belief, defendant Paul Schneider ("Schneider") was and is an Illinois resident with his last known address at 141 W. Jackson Boulevard #300, Chicago, Illinois 60604.

19.     Upon information and belief, defendant Silverstein and Schneider are officers and owners of defendant Skynet, who have been actively operating Skynet.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction in this matter pursuant to 28 U.S.C. §1332.

21.     Defendants had contracted to supply goods or services in the State of New York and had purposefully availed themselves of the privilege of conducting activities within the State of New York by initiating substantial and sufficient telecommunications and electronic contacts with the State of New York, thus invoking the benefits and protections of the laws of the State of New York.

22.     Defendants had also reasonably anticipated and purposefully chosen the State of New York as the place for dispute resolution.

23.     This Court has personal jurisdiction pursuant to New York State Civil Practice Law and Rules 302(a) (1) in that Defendants transacted business and contracted to supply goods or services within the State of New York, and the causes of actions arose from that transaction of business.

24.     This Court has personal jurisdiction pursuant to New York State Civil Practice Law and Rules 302(a) (2) (i) in that upon information and belief, Defendants have actively and regularly solicited and transacted business, and have derived substantial revenue from goods used and services rendered in the State of New York.

25.     This Court has personal jurisdiction pursuant to New York CPLR 302(a) (2) (ii) in that Defendants expect or should reasonably expect the act to have consequences in the State of New York and have derived substantial revenue from interstate commerce.

26.     The venue is proper pursuant to 28 U.S.C. §1391 (a) (2) and (c) as a substantial part of the events or omissions giving rise to the claim occurred in the State of New York.

## FACTS COMMON TO ALL CLAIMS

27.     In or about June 2010, Plaintiff decided to expand its investment opportunities into "fully computerized" trading of securities.

28.     In or about July 2010, Plaintiff contracted with Chad Patel, an experienced programming consultant for financial firms, to develop software programs for securities trading.

29.     During the performance of the contract, Chad left the programming project with 80% complete with the trading software and much functionality was visible within the software system including receiving and organizing real time stock exchange data. Plaintiff compensated Chad $21,316.88 for approximately 170 hours at the rate of $125/hour.

30.     After Chad left and by third party introduction, Plaintiff got to know defendant Skynet, which is a Chicago based team of two (2) programmers, defendants Silverstein and defendant Schneider, who do computer programming for financial firms.

31.     During the negotiations of the Contract on or about September 28, 2010, Silverstein and Schneider represented to David Rucker, president of Plaintiff that Skynet had never failed on any software project, and all projects are successes exceeding expectations. Such statement was later found false.

32.     Silverstein and Schneider also represented to David Rucker that it would approximately take two additional months to complete the project left by Chad.

33.     Relying on Silverstein's and Schneider's representation of experience and successes of their work, Plaintiff decided to engage Skynet to complete the project.

34.     On or about September 28, 2010, Skynet negotiated with Plaintiff about the agreement terms of software developing project for Plaintiff by initiating telephone calls, e-mails and other means of telecommunications to Plaintiff which was and is located in this District.

35.     After negotiation, Skynet agreed to develop and complete the software project left by Chad to be designed for electronically connecting to stock and options exchanges, buying, selling and market-making in various stocks and options ("Project").

36.     Skynet agreed that the software will have the specifications and specific functionalities illustrated by Plaintiff.

37.     Skynet agreed that Silverstein and Schneider were to be the only programmers to work on the Project.

38.     Skynet agreed to write the software of the Project in the way that it would be reasonably easy to add new trading strategies or edit existing trading logic by any other competent programmers.

39.     Skynet estimated and represented to Plaintiff that the Project would take two months and extra time would be required if there were any major changes to the Project.

40.     Skynet agreed not to disclose any proprietary information that it received from Plaintiff to any third party.

41.     In consideration of Skynet's promises, Plaintiff agreed to pay Skynet at the rate of $125/hour for the time Skynet spent to complete the Project.

42.    On or about September 30, 2010, Skynet and Plaintiff executed a simple and brief contract in writing indicating the agreement regarding the Project and a Confidentiality and Non-Disclosure Agreement.

43.    Shortly after September 29, 2010 and after reviewing Chad's work on September 29 and 30, Silverstein and Schneider represented to Plaintiff that (1) the Project left by Chad had been designed poorly; (2) the software of the Project would be too slow for the specified purposes; and (3) the software of the Project was very far from completion.

44.    Skynet then proposed to Plaintiff to integrate a list of pre-built software components already developed by Skynet with the custom software components that Skynet would develop and build for Plaintiff.

45.    In order to induce Plaintiff to agree to use Skynet's pre-built components, Skynet represented, agreed and promised that such pre-built software components could be understood, deciphered, and replaced by any competent programmers in the industry.

46.    In order to induce Plaintiff to agree to use Skynet's pre-built components, Skynet further represented, agreed and promised that Plaintiff could use the pre-built software components free of charge in perpetuity.

47.    In order to induce Plaintiff to agree to use Skynet's pre-built software components, Skynet represented and promised that it would take just as much time to finish the Project left with Chad as it would take to use Skynet's pre-built software components and add in Plaintiff's trading logic to achieve the functionalities specified by Plaintiff.

48.    In order to induce Plaintiff to agree to use Skynet's pre-built software components, Skynet represented, agreed and promised to Plaintiff that the source code to the pre-built

software components was unnecessary to have, and that Plaintiff would be able to make changes to the pre-built software components and add new trading strategies without a problem.

49.     In order to induce Plaintiff to agree to use Skynet's pre-built software components, Skynet represented to and assured Plaintiff that the best course of action was to utilize Skynet's pre-built software components and Plaintiff would pay Skynet for integrating Plaintiff's "strategy and trading logic" into the pre-built software components.

50.     On or about October 1, 2010, relying on Skynet's representations and promises, Plaintiff agreed to use Skynet's pre-built software components and pay for Skynet to integrate custom software components into the pre-built software components ("New Project").

51.     Silverstein and Schneider constantly, regularly and continuously initiated phone calls, e-mails and other electronic communications to Plaintiff discussing, updating and reporting their work and progresses on the New Project.

52.     Defendants constantly, regularly and continuously logged in Plaintiff's server which was and is located in this District to upload, add, edit, and/or test software thereon.

53.     Unknown to Plaintiff and without approval of Plaintiff, Skynet subcontracted substantial part of the work to third party Erik Furman.

54.     Silverstein and Eric Furman in fact worked on developing and integrating custom components to the pre-built software components.

55.     Upon information and belief, Eric Furman was much less experienced and did 50% of the work.

56.     Unknown to Plaintiff, Skynet specifically designed the software architecture such that Skynet would be the only firm that could edit many of the main components of the program, and Plaintiff would be forced to continue working with Skynet in perpetuity.

57.     Unknown to Plaintiff, some pre-built software components and custom components developed by Skynet for Plaintiff contained version control modules and were set to expire on June 1, 2011.

58.     When developing and integrating custom software components for Plaintiff, Skynet intentionally did not provide meticulous documentation for how the program worked for the components, which made it essentially impossible for any competent programmers to understand the program.

59.     It is standard in computer programming, especially for complicated programs, to have meticulous documentation so that someone other than the program designer can understand and edit the program.

60.     Skynet intentionally obscured the actual purpose of the software developed for Plaintiff.

61.     Skynet refused to provide source code of the pre-built software component such that it was impossible to follow the flow of the program.

62.     Plaintiff did not change the specifications for the functionality of the software after the Contact was signed.

63.     By April 1, 2011, six (6) months after Skynet started to work on the New Project, the New Project was incomplete and there was no visible functionality within the program.

64.     In or about April 2011, Skynet estimated that it would take additional four months at 40 hours per week to complete the New Project.

65.     Skynet refused to complete the New Project without further payment from Plaintiff.

66.     Plaintiff was prevented from hiring third party programmer to complete the New Project as Plaintiff has no access to the source code of Skynet's pre-built software components and Skynet, when programming, purposefully failed to provide meticulous documentation for all software components.

67.     It is impossible for any competent programmer except for Skynet to complete the New Project under aforesaid circumstances.

68.     As of today, Skynet has failed to complete and deliver a software program with functionalities specified and agreed by the parties.

69.     From October 2010 to April 2011, Plaintiff paid Skynet for working on the New Project in approximate amount of $131, 623.75.

70.     From September 2010 to April 2011, Defendants communicated substantially and regularly by and through telephones, e-mails and other electronic means with Plaintiff which was and is located in this District.

71.     Defendants performed substantial part of work under the Contract and agreement by the parties on Plaintiff's server which was and is located in this District.

72.     Because of Skynet's failure to timely complete and deliver functional program agreed by parties, Plaintiff suffered substantial damages, including but not limited to incidental and consequential damages to be determined at the trial.

## FIRST CAUSE OF ACTION

(Breach of Contract against Skynet)

73.     Plaintiff incorporates herein by reference each and every allegation in paragraphs 1-72, as if set forth in full herein.

74.     Plaintiff has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Contract.

75.     Skynet breached the Contract by failing to complete and finish the Project or New Project within two months.

76.     Skynet breached the Contract by failing to deliver a software program with functionalities specified and agreed by the parties within two months after the contract was signed and such failure is continuing.

77.     Skynet breached Contract by outsourcing a substantial part of work to third party Eric Furman without knowledge and consent by Plaintiff.

78.     Due to Skynet's breach of Contract, plaintiff suffered substantial monetary and/or economic damages in approximate amount of four million dollars ($4,000,000) or the amount to be determined at trial, plus interest and costs.

## SECOND CAUSE OF ACTION

(Breach of Covenant of Good Faith and Fair Dealing against Skynet)

79.     Plaintiff incorporates herein by reference each and every allegation in paragraphs 1-78, as if set forth in full herein.

80.     Skynet purposefully and intentionally induced Plaintiff to use its pre-built software components by misrepresentations, refused to give Plaintiff its open source code, set the components to expire by certain date, and failed to provide meticulous documentation for the software program developed by Skynet.

81.     Skynet by setting all of its pre-built software components to expire automatically on June 1, 2011 has forced Plaintiff to renew the software developed by Skynet in order for Plaintiff to continue to use the software.

82.     Skynet's acts and behaviors have prevented Plaintiff to engage any other competent programmer to understand, decipher, and complete the work left by Skynet.

83.     Skynet breached the covenant good faith and fair dealing with Plaintiff.

84.     As a result of Skynet's breach of the covenant of good faith and fair dealing, Plaintiff was injured and suffered substantial monetary and/or economic damage in the approximately amount of four million dollars ($4,000,000) or the amount to be determined by trial, plus interests and costs.

## THIRD CAUSE OF ACTION

(Fraudulent Inducement against All Defendants)

85.     Plaintiff incorporates herein by reference each and every allegation in paragraphs 1-84, as if set forth in full herein.

86.     Before signing the Contract, Silverstein and Schneider represented to Plaintiff that all Skynet's previous projects were successes exceeding expectations.

87.     Upon information and belief, the representation was false.

88.     Silverstein and Schneider when making the representation knew such statement was false.

89.     Plaintiff relied on Silverstein's and Schneider's representation about Skynet's previous successful project experiences and made the decision to contract with Skynet to do the work.

90.     If Plaintiff knew the truth about Skynet's past project experiences and failures, Plaintiff would not have contracted with Skynet to complete the Project.

91.     After the Contract was signed and on or about October 1, 2010, Silverstein and Schneider represented to Plaintiff that (1) the Project left by Chad had been designed poorly; (2)

the software of the Project would be too slow for the specified purposes; and (3) the software of the Project was very far from completion.

92.     On or about October 1, 2010, Silverstein and Schneider represented to and assured Plaintiff that the best course of action was to utilize Skynet's pre-built software components and Plaintiff would pay Skynet for integrating Plaintiff's "strategy and trading logic" into the pre-built software components.

93.     On or about October 1, 2010, Silverstein and Schneider represented to Plaintiff that such pre-built software components could be understood, deciphered, and replaced by any competent programmers in the industry.

94.     On or about October 1, 2010, Silverstein and Schneider represented that it would take just as much time to finish the Project left with Chad as it would take to use Skynet's pre-built software components and add in Plaintiff's trading logic to achieve the functionalities specified by Plaintiff.

95.     On or about October 1, 2010, Silverstein and Schneider represented to Plaintiff that the source code to the pre-built software components was unnecessary to have, and that Plaintiff would be able to make changes to the pre-built software components and add new trading strategies without a problem.

96.     The representations made to induce Plaintiff to use Skynet's pre-built software components were false.

97.     Silverstein and Schneider when making those representations knew those representations were false.

98.     Relying on Silverstein's and Schneider's misrepresentations, Plaintiff agreed to use Skynet's pre-built software components.

99.   If Plaintiff knew the representations were false, Plaintiff would not have chosen to use Skynet's pre-built software components.

100.   As a result of Defendants' fraud, Plaintiff suffered substantial monetary and/or economic damages in approximately amount of four million dollars ($4,000,000) or the amount to be determined at trial, interests, reasonable attorneys' fees and costs, and Defendants should be liable for punitive damages to be determined pursuant to statutes of the State of New York.

## FOURTH CAUSE OF ACTION

(Unjust Enrichment against Skynet)

101.   Plaintiff incorporates herein by reference each and every allegation in paragraphs 1-100, as if set forth in full herein.

102.   Plaintiff paid Skynet in total amount of $131, 623.75.

103.   Skynet failed to deliver complete functional software specified and agreed under the Contract and such failure is continuing.

104.   Skynet was enriched by receiving Plaintiff's payment.

105.   It is against equity and good conscience to permit Skynet to retain such payment by Plaintiff.

106.   Therefore, Skynet should return and repay Plaintiff for the amount it received from Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered in its favor and pray:

a.   For an award of damages in amount of $4,000,000 or the amount to be determined at trial sustained by Plaintiff and punitive damages pursuant to statutes of the State of New York

to be determined at trial against defendant Skynet on first, second, third and fourth causes of actions;

       b.      For an award of damages in amount of $4,000,000 or the amount to be determined at trial sustained by Plaintiff, and punitive damages pursuant to statutes of the State of New York against defendants Silverstein and Schneider on the third cause of action;

       c.      For an award of prejudgment and post judgment interests;

       d.      For an award of reasonable attorneys' fees and other expenses incurred by Plaintiff in the pursuit of this action; and

       e.      For costs of suit and such further relief as the Court may deem just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues herein so triable.

Dated: Queens, New York
      June 17, 2011

                             KEVIN KERVENG TUNG, P.C.

                             By: _____
                                Kevin K. Tung

                             Kevin K. Tung, Esq.
                             Kun Zhao, Esq.
                             136-20 38th Avenue, Suite 3D
                             Flushing, NY 11354
                             (718) 939 4633

                             Attorneys for Plaintiff
                             Golden Archer Investments LLC